**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 16-23920-CIV-LENARD/O'SULLIVAN

**ROCKWOOD SPECIALTIES, LLC,**

      Plaintiff,

**v.**

**PRIME INVESTORS & DEVELOPERS,**
**LLC, and KEY LARGO LAND TRUST,**
**STEVEN B. GREENFIELD, TRUSTEE,**

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (D.E. 22)

**THIS CAUSE** is before the Court on Defendants Prime Investors & Developers, LLC ("Prime"), and Steven B. Greenfield as Trustee for the Key Largo Hospitality Land Trust's ("the Trust") Motion to Dismiss Plaintiff's Second Amended Complaint, filed January 25, 2017.  ("Motion," D.E. 22.)  Plaintiff, Rockwood Specialties, LLC ("Rockwood"), filed a Response on February 8, 2017, ("Response," D.E. 23), to which Defendants filed a Reply on February 22, 2017, ("Reply," D.E. 26).  Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

## I.    Background[1]

On July 10, 2015, general contractor Prime entered into a subcontractor agreement (the "Contract") with Rockwood whereby Rockwood agreed to furnish labor, services,

---

[1]    The following facts are gleaned from Plaintiff's Second Amended Complaint (D.E. 20) and are deemed to be true for purposes of ruling on Defendants' Motion.

and materials for the improvement of real property owned by the Trust (the "Project"). (Second Am. Compl. ¶ 6.)  Rockwood attached a copy of the Contract as Exhibit A to the Second Amended Complaint.  (D.E. 20-1.)  Rockwood satisfactorily performed its work under the Contract from August 4, 2015 until May 18, 2016.  (Second Am. Compl. ¶ 8.) Rockwood stopped working on the Project due to Prime's failure or refusal to pay Rockwood under the Contract.  (Id. ¶ 10.)  The Subcontractor Agreement has a total value of $1,159,345.15, of which $615,282.15 remains unpaid.  (Id. ¶ 9.)

On September 13, 2016, Rockwood initiated this lawsuit.  (D.E. 1.)  On January 11, 2017, Rockwood filed the operative Second Amended Complaint (D.E. 20) which asserts three causes of action: (1) breach of contract against Prime, (id. ¶¶ 12-14); (2) foreclosure of a construction lien against the Trust, (id. ¶¶ 15-21); and (3) quantum meruit/quasi-contract against the Trust, (id. ¶¶ 22-27).

Defendants move to dismiss Counts (2) and (3) for failure to state a claim upon which relief can be granted.  (D.E. 22 at 4-7.)

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.  Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"   Twombly, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference."  Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. Id.; see also Iqbal, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

Sinaltrainal v. Coca-Cola, 578 F.3d 1252, 1260 (11th Cir. 2009), abrogated on other grounds by Mohamad v. Palestinian Auth., __ U.S. __, 132 S. Ct. 1702, 1706 n.2 (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

### III.    Discussion

Defendants argue that the Second Amended Complaint fails to adequately allege claims for the enforcement of a construction lien (Count 2) or quantum meruit/quasi-contract (Count 3).  (D.E. 22 at 4-7.)  The Court will discuss each in turn.

### a.    Construction lien

First, Defendants move to dismiss Count 2 of the Second Amended Complaint, which seeks to foreclose upon a construction lien against the Trust.  (Second Am. Compl. ¶¶ 15-21.)

"[T]he fundamental purpose of the Construction Lien Law is to protect those who have provided labor and materials for the improvement of real property."  WMS Constr., Inc. v. Palm Springs Mile Assocs., Ltd., 762 So. 2d 973, 974-75 (Fla. Dist. Ct. App. 2000) (citing Kettles v. Charter Mortg. Co., 337 So. 2d 1012 (Fla. Dist. Ct. App. 1976)). "In obtaining this protection a subcontractor must be certain it strictly complies with the statutory provisions by which it seeks affirmative relief."  Id. at 975; see also Stock Bldg. Supply of Fla., Inc. v. Soares Da Costa Constr. Servs., LLC, 76 So. 3d 313, 316 (Fla. Dist. Ct. App. 2011) ("Construction liens are purely creatures of statute and must be strictly construed.").

"A . . . subcontractor who is not in privity with the owner may acquire a lien on the real property improved for any money that is owed to him or her for labor, services, or materials furnished in accordance with his or her contract and with the direct contract." Stock Bldg. Supply, 76 So. 3d at 316 (citing Fla. Stat. § 713.06).  However, "as a prerequisite to perfecting a [construction] lien" under Section 713.06, a subcontractor not

4

in privity with the owner "must serve a notice on the owner setting forth the lienor's name and address, a description sufficient for identification of the real property, and the nature of the services or materials furnished or to be furnished." Fla. Stat. § 716.03(2)(a). "[T]he notice to owner requirement relevant to those not in privity with the owner is 'to protect an owner from the possibility of paying over to his contractor sums which ought to go to a subcontractor who remains unpaid.'" Broward Atl. Plumbing Co. v. R. L. P., Inc., 402 So. 2d 464, 466 (Fla. Dist. Ct. App. 1981) (quoting Boux v. E. Hillsborough Apts., Inc., 218 So. 2d 202, 202 (Fla. Dist. Ct. App. 1969)).

However, pursuant to Section 713.05, Florida Statutes, a subcontractor who is in privity with the property owner is not required to serve a notice to the owner. See Marble Unlimited, Inc. v. Weston Real Estate Inv. Corp., 125 So. 3d 286, 288 (Fla. Dist. Ct. App. 2013) (citing King v. Brickellbanc Sav. Ass'n, 551 So. 2d 604, 605 (Fla. Dist. Ct. App. 1989)). Privity exists where (1) the property owner knows "that a particular subcontractor is supplying services or materials to the job site and an express or implied assumption by the owner of the contractual obligation to pay for those services or materials[,]" or (2) "for all practical purposes, a common identity exists between the owner and the contractor." Aetna Cas. & Sur. Co. v. Buck, 594 So. 2d 280, 281-82 (Fla. 1992). To acquire a lien, a subcontractor in privity with the owner is required to record a "Claim of Lien" and furnish a "Contractor's Final Payment Affidavit." Fla. Stat. §§ 713.05, 713.06(3)(d).

Defendants argue that Rockwood is not in privity with the owner and has failed to set forth any factual allegations that Rockwood complied with the statutory "Notice to

5

Owner" requirement.  (Mot. at 4.)  In its Response, Rockwood argues that the necessary

factual allegations are contained in Paragraph 17 of the Second Amended Complaint.

(Resp. at 3-4.)  Paragraph 17 states, in its entirety:

> The Plaintiff, ROCKWOOD, has complied with the requirements of
> Florida Statutes, Section 713, et. seq., relating to construction liens, notices
> to owner, contractor's final payment affidavits, etc., if applicable, or same
> have been waived or excused.  Specifically:
>
> (A.) The Plaintiff is excused from serving a Notice to Owner in this case
> because privity exists between the owner and the subcontractor.  The
> purpose of serving the notice to owner is to alert the owner to guard
> against double payment.  Under Florida law, such notice is excused
> when privity exists between the owner and the subcontractor.   Privity
> exists either when the owner knows a subcontractor is working on the
> job and that owner has assumed the contractual obligation for the
> work or when the owner and contractor share a common identity.  In
> either situation, a notice to owner is not required.  See Aetna Casualty
> v Buck, 594 So. 2d 280 (Fla. 1992).
>
> (B.) The Plaintiff timely recorded and properly served its Claim of Lien and
> an Amended Claim of Lien.  A copy of the Plaintiff's Claim of Lien
> and Amended Claim of Lien is attached hereto as Exhibit C.
>
> (C.) The Plaintiff also served a Contractor's Final Payment Affidavit upon
> the owner and contractor.   A copy of Plaintiff's Final Payment
> Affidavit is attached hereto as Exhibit D.

(Second Am. Compl. ¶ 17.)  Thus, Paragraph 17 indicates that Plaintiff is proceeding

under the theory that it is in privity with the Trust and, therefore, it need not file a Notice

of Claim.   (Id. ¶ 17(a).)  It further alleges that it has complied with the statutory

requirements of recording a Claim of Lien, which it attached as Exhibit C to the

Complaint, (id. ¶ 17(b)), and furnishing the owner with a Contractor's Final Payment

Affidavit, which is attached as Exhibit D to the Second Amended Complaint, (id. ¶

17(c)).  "Under the Federal Rules of Civil Procedure, these exhibits are part of the

pleading 'for all purposes.'" <u>Griffin Indus., Inc. v. Irvin</u>, 496 F.3d 1189, 1205 (11th Cir. 2007) (quoting Fed. R. Civ. P. 10(c)).

The Court finds that because Plaintiff is proceeding under the theory that it is in privity with the Trust, it is not required to allege that it satisfied the Notice to Owner requirement of Section 713.06(2)(a).  <u>See</u> <u>Marble</u>, 125 So. 3d at 288 ("A lienor who is in privity with the owner is not required to serve a notice to owner, as required by section 713.06.").  The Court further finds that the Amended Claim of Lien and Contractor's Final Payment Affidavit—which are attached to the Second Amended Complaint as Exhibits C and D, respectively—provide all of the factual information Defendants claim is lacking in Paragraph 17 of the Second Amended Complaint.  (See D.E. 20-3 at 3.) Because those Exhibits are considered part of the complaint for all purpose, <u>Griffin</u>, 496 F.3d at 1205, the Court finds that Count 2 adequately alleges a claim for the foreclosure a construction lien.

### b.      Quantum meruit/Quasi-contract

Second, Defendants move to dismiss Count 3 of the Second Amended Complaint, which is titled "Action for Quantum Meruit (Quasi Contract)" against the Trust.  (Second Am. Compl. ¶¶ 15-21.)

"An action founded on quantum meruit is a common law variety of restitution to enforce an implied promise, otherwise referred to as a 'quasi contract' or a contract implied in law."  <u>Harrison v. Pritchett</u>, 682 So. 2d 650, 652 (Fla. Dist. Ct. App. 1996) (citations and internal quotation marks omitted).  "To state a claim for quantum meruit, unjust enrichment, or quasi contract under Florida law, a plaintiff must allege (1) the

7

plaintiff conferred a benefit on the defendant, (2) the defendant had knowledge of the benefit, (3) the defendant accepted or retained the benefit conferred, and (4) the circumstances indicate that it would be inequitable for the defendant to retain the benefit without paying fair value for it." Dyer v. Wal-Mart Stores, Inc., 535 F. App'x 839, 841-42 (11th Cir. 2013) (citing Merle Wood & Assocs. v. Trinity Yachts, LLC, 714 F.3d 1234, 1237 (11th Cir. 2013); Alevizos v. John D. & Catherine T. MacArthur Found., 764 So. 2d 8, 13 (Fla. Dist. Ct. App. 1999)).

Defendants argue that Count 3 should be dismissed because it is not pled in the alternative to Count 2, with which it is in direct conflict. (Mot. at 6.) Specifically, Defendants argue that Count 2 alleges that a contract exists between Rockwood and the Trust, whereas an action for quantum meruit necessarily alleges that a formal contract does not exist. (Id.) Defendants argue that "[a] plaintiff may not pursue an equitable remedy, such as quantum meruit or quasi-contract, if an express contract exists. (Id. at 6 (citing Fulton v. Brancato, 189 So. 3d 967, 969 (Fla. Dist. Ct. App. 2016) (citing Kovtan v. Frederiksen, 449 So. 2d 1, 1 (Fla. Dist Ct. App. 1984)).

However, the Federal Rules of Civil Procedure permit alternative and/or inconsistent pleadings. Fed. R. Civ. P. 8(d)(2) & (3).[2] Under Florida law, a plaintiff may plead alternative theories of breach of contract and quantum meruit. See Walton Constr. Co., LLC v. Corus Bank, No. 4:10–CV–137–SPM–WCS, 2011 WL 2938366, at *5 (N.D.

---

[2]     "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Fed. R. Civ. P. 8(d)(2).  "A party may state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).

Fla. July 21, 2011) (citing <u>S. Pan Servs. Co. v. S.B. Ballard Constr. Co.</u>, No. 3:07-cv-592-J-33TEM, 2008 WL 3200236, at *4 (M.D. Fla. Aug. 6, 2008)) "[W]hile the law does not permit a party to simultaneously prevail on an unjust enrichment theory and a contractual theory, it does not require the dismissal (at the motion to dismiss stage) of an unjust enrichment claim merely because an express contract exists that arguably governs the conduct complained of." <u>In re Checking Account Overdraft Litig.</u>, 694 F. Supp. 2d 1302, 1321 (S.D. Fla. 2010).

Here, Defendants argue that Count 3 fails because they "do not contest the existence of the express contract Rockwood attached to the second amended complaint[.]"  (Reply at 5 (citing <u>In re Managed Care Litig.</u>, 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002)).  However, the contract Rockwood attached to the Second Amended Complaint is a subcontractor agreement between Rockwood and Prime (and is the subject of the breach of contract claim in Count 1).  (<u>See</u> D.E. 20-1 at 1.)  Count 3 of the Second Amended Complaint alleges quantum meruit against the Trust.  (Second Am. Compl. ¶¶ 22-27.)  Defendants have not conceded that a valid contract existed between Rockwood and the Trust.  Because there are outstanding factual issues regarding whether Rockwood can recover from the Trust under a contract theory, the Court rejects Defendants' argument.  <u>In re Checking Account Overdraft Litig.</u>, 694 F. Supp. 2d at 1321 (rejecting the same argument because "Defendants have not conceded that Plaintiffs are entitled to recovery under the contract, and it is possible that if their contractual claim fails, Plaintiffs may still be entitled to recovery under an unjust enrichment theory").

Defendants also argue that Count 3 fails because the Second Amended Complaint fails to allege that Rockwood exhausted all of its remedies against Prime.  (Mot. at 6 (citing Commerce P'ship 8098 L.P. v. Equity Contracting Co., Inc., 695 So. 2d 383, 387-88 (Fla. Dist. Ct. App. 1997) (citing Maloney v. Therm Alum Indus., Corp., 636 So. 2d 767, 770 (Fla. Dist. Ct. App. 1994))).)   In Commerce Partnership, a subcontractor working on the development of real property sued the property owner for quantum meruit, arguing that the property owner failed to pay the general contractor who, therefore, could not pay the subcontractor for the work performed.  695 So. 2d at 384. The Florida Court of Appeals held that, under Maloney, for a subcontractor to maintain a quasi-contract action against a property owner, the subcontractor must plead and prove "that [1] the subcontractor had exhausted all remedies against the general contractor and still remained unpaid and [2] that the owner had not given consideration to any person for the improvements furnished by the subcontractor."  695 So. 2d at 388.

The Second Amended Complaint does not specifically plead that Rockwood has exhausted all of its remedies against Prime or that the Trust has not given consideration to Prime (or anyone else) for the work Rockwood performed on the Project.  Indeed, Rockwood does not argue otherwise; rather, it argues ipse dixit that Commerce Partnership is "factually and legally distinguishable from this case[.]"   (Resp. at 6.) Rockwood's failure to explain how Commerce Partnership is distinguishable from this case is unsurprising considering Commerce Partnership is directly on point for all material purposes.

10

Because Rockwood failed to satisfy the quantum meruit pleading requirements identified in <u>Commerce Partnership</u>, Count 3 must be dismissed without prejudice.

## III.   Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.   Defendants' Motion to Dismiss Rockwood Specialties, LLC's Second Amended Complaint (D.E. 22) is **GRANTED IN PART AND DENIED IN PART** consistent with this Order;

2.   Count 3 (quantum meruit/quasi-contract) of the Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE;** and

3.   Rockwood shall have fourteen days from the date of this Order to file a Third Amended Complaint, if it chooses to do so.

**DONE AND ORDERED** in Chambers at Miami, Florida this 11th day of July, 2017.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**